The appellant presented a petition for a re-hearing, and afterwards, on the 24th of October 1809, the following opinion was delivered by Bibb, then Chief Justice.
Marshall vs. Craig, upon a reconsideration.
OPINION of the Court, by
Ch. J. Bibb.
— Next to the doing of right, and a consciousness to have faithfully fulfilled those solemn obligations by which we are bound to justice and the laws, we hold in estimation the administration of justice to the satisfaction of the public. That in every controversy both parties should depart satisfied, however devoutly to be wished, however consoling to a mind of sensibility, is, nevertheless, a picture too flattering to be believed, too unlike the mildest features of justice to be indulged. To arrest and enchain the public as well as each individual opinion, and secure their willing assent to a judicial decision, is worth endeavoring, though beyond attainment, perhaps, in the present condition of man. Having in view the ends proposed in the establishment of a government of laws, the court have considered and reconsidered the points in controversy between these parties ; it is their duty to state the final result, and the principles upon which they have decided.
The case, stript of the forms of pleadings and the minutiae of evidence, is concisely this :
Craig sold to Marshall a certain tract of land, the complete title to which involved the relative merits of certain claims, called Craig’s, Pelham’s and Briscoe’s. These claims Craig covenanted to unite, the two former absolutely, the latter sub modo ; and sold them, to a certain extent, to Marshall, that is to say, to the extent of 330 acres, at the price of twelve and a half dollars per acre. Marshall, on his part, as an inducement and consideration of the covenant on the part of Craig, stipulated to pay one third of the purchase money on the transfer of *387 Craig’s claims, one third on the transfer of Pelham’s claim, the other third was to abide the transfer of Bris-coe’s claim, on such election as Craig should make under the modifications of his covenant respecting that claim. Marshall farther covenanted that Craig should have the pre-emptive right of Briscoe’s claim for “ — years.” It was farther stipulated between the parties, that if Craig did not use his said pre-emptive right and secure Briscoe’s claim within the term limited, that then Marshall should be at liberty to purchase the said Bris-coe’s claim,. “ and that on his own account, and not for the benefit of the said Lewis Craig.” It is admitted in the pleadings and in argument that Craig did transfer the rights of Craig and of Pelham, nor is it a point controverted but that Marshall did, shortly after the date of the covenant, interfere and acquire to himself the claim of Briscoe, at least so far as it overhangs the 330 acres aforesaid ; and it is admitted that Marshall has paid the price of twelve and a half dollars per acre, except the sum which he alleges was paid by him for Briscoe’s claim.
By reference to the former opinion of the court a more minute statement of the contract will be seen, but this is deemed sufficient to bring into full view the main questions in. the cause.
The first question to be considered is, shall Craig be bound to allow Marshall the price he may have paid for Briscoe’s claim, admitting that price to be far less than the portion of the purchase money suspended and dependent upon Craig’s covenant to unite that claim to the others? It is not pretended that Marshall purchased Briscoe’s claim at the instance or request of Craig — that he derived no authority to do so from the contract is clear. It is therein declared that a pre-emptive right'is established in Craig. The contract also.provides a period at which Marshall should be at liberty to purchase. The expression of that period or event carries along with it the exclusion of a purchase by Marshall at a prior period or on a prior event. The maxim may here well apply, expressio unius, est. exclmio alterius„. B,ut the terms in which the covenant, upon this subject, is penned, silences all claim of authority for Marshall to purchase within that period, even for the benefit of Craig: for the draftsman seems t® have had in mind *388 the rule of equity, that the vendee of an estate shall nee purchase up an adversary claim to defeat his first purchase, or if he does, that it shall, at the election of the first vendor, enure to his benefit upon paying the price of the second purchase. Lest the permission to Mar* shall, when the contingency should happen, might ever, then be construed as a bare permission to purchase for the benefit of Craig, he adds, “ and that for his own be - nefit, and not for the benefit of Craig.” Of what use will the reservation of a pre-emptive right be to Craig if, within the period limited, Marshall may interfere, and drive him either to pay the price which Marshall pays; for Briscoe’s claim, or abandon his claim for the third of the price of the land sold l It is said he may su e upon that breach of covenant only, and have appropriate damages assessed. But what damages has he sustained ? If he cannot claim this breach on the part of Marshall as entitling him to demand payment of that part of the consideration which had been postponed for Briscoe’s claim, then he has sustained damage, by Marshall’s purchase, equal to the difference between the sum suspended and such a contract as Craig might have made but for Marshall’s intermeddling. But if Mar-, shall is to be allowed what he paid, before Craig can save himself from his covenant to purchase Briscoe’s claim, and thereby demand the payment as upon a compliance with his covenant, yet it follows that Craig has, sustained damage equal to the difference between what his own contract might have been, and that which he must allow Marshall. But how can a jury try what might have been if a previous event had not happened. Craig contracted to have a certain time for making an experiment of his own means of securing Briscoe’s claim ; Marshall has prevented this experiment, and would now refer it to the book of possibilities. Craig might have induced a surrender of Briscoe’s claim as of inferior dignity, and ineffectual against the other claims he sold to Marshall; he might have purchased, it for a cent, or made as good a bargain as Jackson did. Craig was induced to postpone the payment of a large portion of the purchase money until he should secure Briscoe’s claim ; Marshall covenanted that Craig should have the pre-emptive right of that claim for a certain time; could either party have expected, if good faith *389 was observed, that within the period Marshall, by his, purchase of Briscoe’s claim, could compel Craig (to entitle himself to the contract price of the land) either to allow the price paid for Briscoe’s claim, or else, to prove in a court of justice what contract might have been conceived and brought forth by the womb of Time if Marshall had not broken his covenant? Such.an issue in a court of justice would be ridiculous. As Marshall paid the money for Briscoe’s claim against th* consent of Craig, and against the stipulations of the covenant, it is clear the law raises no assumpsit from Craig to Marshall on that account.
This question being settled, a second is to be considered. Upon the transfer of Craig’s and Pelham’s* claims to Marshall, and the purchase made by Marshall himself of Briscoe’s claim in violation of Craig’s preemptive right, had Craig a right to demand and have of Marshall the contract price of the land, in the same manner as if Craig had performed his covenant to purchase and secure Briscoe’s claim ?
So long as the covenant to purchase Briscoe’s claim was obligatory on Craig, it is clear he could not demand payment of that part of the contract price’of the land which was dependent on his performance of that previous condition. But so soon as Craig was discharged from that obligation or previous condition, by performance, or any other act equivalent to performance or a discharge of that obligation, he became entitled to have payment, unless the act which discharged Craig’s obligation to purchase, did also discharge Marshall’s obligation t® pay. It seems equally clear that Marshall, by no wrongful act of his own, apart from the assent or concurrence of Craig, could discharge Marshall from his obligation, But his purchase of Briscoe’s claim was a wrongful act of his own, and without the assent or concurrence of Craig ; therefore, the solution of the question depends on the effect of Marshall’s wrongful act upon Craig’s obligation to purchase Briscoe’s claim. That the purchase made by-Marshall himself is a perpetual bar of his right against Craig upon that obligation, and operates as a total discharge of Craig, seems to follow from settled principles of the common law. If the condition of an obligation consist pf two parts in the disjunctive, or be to do *390 one of two things before or at a day certain, and boti& the things be possible at the time of making the obligation, and before the time of performance one of th& things is become impossible to be done by the act of the obligee himself, in this case the obligation is discharged for ever. So if the condition be that the obli-gor shall marry A. before Easter, or pay £. 20 to the obligee at Michaelmas, and before Easter the obligee marry A. himself, and the marriage doth continue between them until Easter be past, in this case the obligation is gone and discharged for ever. So if the obligation be to do one thing only, and that thing be possible at the time, but afterwards, and before the time when it as to be performed, it doth become impossible by tha act of the obligee, in this case also the obligation is discharged for ever — See Shepherd’s Touch, p. 393-4. If a man make a feoffment in fee, upon condition that the feoffee shall reinfeoff him before such a day, and before the day the feoffor disseise the feoffee and hold him out by force until the day be past, the estate of the feoffee is absolute; far the feoffor is the cause wherefore the condition cannot be performed, and therefore shall never take advantage for the non performance thereof. So if A. be bound in a bond that I. S. shall marry I. C. before such a day, and before the day B, the obligee, marry her himself, he shall never take advantage of the bond, for that he himself is the meane that the condition could not bs performed — -Coke Litt. 206 b — •“ and this is regularly true in all cases,” saith that great lawyer. See, also, Coke Litt. 207, a, and Butler’s Notes upon Coke (same fol.) 1,2, and Coke Litt. 209-10, b. If he who is to be benefited by another’s fulfilling his contract or agreement is the occasion why it is not carried into execution, the contract is thereby dissolved, and the party bound discharged from his obligation — (Powell on Contracts, p. 417-18-19 see the cases there put and the authorities cited.) After citing various cases and examples of discharge by the act of the obligee, the author adds, “ and in such cases, the party bound to performance will be in the same condition as if the agreement had been fulfilled by him” — ' “ for if he whom it concerns to have my part of the covenant fulfilled is the occasion why it is not, it is the same thing to me as if it were fulfilled.” — " So where *391 ⅞ carpenter covenanted to build a house for another on his land for £. 10, and came prepared so to do, but was ordered by him to desist, the carpenter, after such command to desist, might have maintained an action for the £. 10. — Powell 420. It would be tedious to set forth the various exemplifications of this doctrine as contained in the books : the authors referred to, and examples quoted, seem decisive on the question before us.
The appellee had sold his land, and yielded possession, under a contract for the payment of twelve and a half dollars per acre; he came under a condition to the appellant to purchase Briscoe’s claim to it, or not demand a sum agreed upon if he did not purchase within a time agreed upon : the appellant, on his part, came under an obligation not to purchase Briscoe’s claim within that time ; but he has purchased, and upon the most cogent reason, as is said in argument. Then the same reason which compelled him to purchase must compel him to submit to the consequences of the purchase, and pay the sum which has become due in consequence of the discharge of Craig's obligation to purchase. This doctrine is not a mere technical, positive’ rule of the common law ; it is a rule of reason and natural justice, essential to the due preservation of faith in contracts. It is not confined to the doctrine of the common law of England, or of our own state, but is acknowledged by-civilians as a correct rule of enlarged and liberal juris-prudenee. And, according to this doctrine, we are furnished with several apt quotations from the civil law by Pothier, in his “ Treatise on Obligations considered in a moral and legal point of view,” p. 127, of which we select the following: “ Pro impleta habetur conditio, cum per eum fiat, qui, si impleta esset debiturus essetP “ It is (says Pothier) a rule common to all the conditions of obligations, that they ought to be holden to be performed when the debtor, who has obliged himself under the condition, has prevented its performance.” Marshall had obliged himself to pay a sum of money, under a condition that Craig should, before a certain time, purchase and secure to him Briscoe’s claim ; but Marshall has prevented the performance of the condition by purchasing it himself within the time limitted; therefore, the condition ought be holden as performed.
*392 The third question is, ought the court to have granted a new trial on the application of Marshall ? The jury found the balance due of the contract price with interést; they found no more than what is indisputably due, according to the solutions of the first and second questions.
But it has been strongly relied upon in argument that the circuit court erred in permitting Briscoe’s agent to detail to the jury what price Jackson gave for Bris-coe’s claim. This objection must be predicated upon three propositions, or upon some one or more of them. 1st. That the breach assigned by the declaration went for the contract price only. 2d. That there was no connection between Marshall and Jackson in the purchase made of Briscoe’s claim. 3d. That the recital, in the agreement of Jackson and Marshall respecting that purchase, of an allowance to Jackson at the rate of 15s. per acre for so much as Marshall was to have by the agreement, was conclusive evidence of what Marshall paid for it. A short attention, candidly bestowed upon the declaration and the evidence, will show that these propositions cannot be maintained. The declaration, after setting forth the covenants, and making a foundation of action for the contract price, then assigns a breach by the violation of the pre-emptive right of Craig, covenanted for by Marshall; and “likewise” in the failure to pay the amount of the purchase money. Upon the first breach assigned, the appellee might have insisted before the jury for such additional damages as he had sustained (over and above the non payment of the contract price) by the violation of his pre-emptive right. The articles of agreement between Jackson and Marshall, bearing date but the day after the covenants between the appellant and appellee, shew a connection between Marshall and Jackson in the subsequent purchase made by Jackson of Briscoe’s agent ; through the medium of this agreement and Jackson’s subsequent purchase Marshall became part owner of Briscoe’s claim. To what extent, is therein precisely ascertained by reference to claims and boundaries, not to be understood without an intimate acquaintance with them, or a plat and connexion of the claims and objects alluded to. •Moreover, the contract is not for the purchase of s© *393 touch of Briscoe’s claim solely arid individually at ISs. per acre, but is a complicated agreement of division, sale and exchange, which might very properly be left to the jury, in connection with Jackson’s subsequent purchase, &c. for them to consider whether the price of ISs. per acre, stipulated by Marshall, Was not nominal, and what benefit resulted from the whole contracts with Jackson and Briscoe, by which Marshall had thus broken his covenant with Craig. But it has been supposed, in the petition and argument, that such evidence might have poisoned the minds of the jurors, and that it has had some effect upon the deliberations of this court» The jurors may have set off the damages upon the violation of Craig’s pre-emptive right against the price paid by Marshall for Briscoe’s claim : farther than that, they have not been influenced by the testimony objected to, however legal and proper. They have found in damages only the balance due of the contract price, with interest; less than that they could not legally have found, whatever price Marshall or Jackson may have paid for Briscoe’s claim. This court have founded their opinion on the main questions, upon facts never controverted in the cause, but admitted in the pleadings, assignments of error, petition for reconsideration, and argument. They have drawn conclusions of law different from those advanced by the appellant and his counsel. So far as the evidence was necessarily connected with the bill of exceptions and assignments of error, we have looked into it for the purpose of giving a decision upon those points. No fact necessary to support the verdict of the jury to the extent of damages assessed being controverted, we can see no cause for a new trial: nor have we any cause to change the former judgment of this court.
'We have to regret, that in a matter which now appears to be plainly his right, the appellee has been delayed since the first argument of the cause in the fall term 1808 until the present. The delay has been produced, in a great degree, by the multiplicity of suits, and, in some degree, by a desire to look into books which could not be readily obtained. We have waited for that conscious assurance in adjudication, which is superier to every gratification a vain reputation for intuition and rapid decision could bestow.
Oct. 8th 1812.
The rules of decision in court of law and courts of equity are the same.
Upon the premises, it is considered by this court that the former judgment of this court stand unaltered and affirmed,
Marshall exhibited his bill in chancery for relief, which, upon hearing, was dismissed ; and, upon an appeal, the cause was decided on the 8th of Oct. 1812, by Boyce, chief justice, Wallace, Logan and Ows-ley, judges. The opinion of the court, by Boyle, chief justice, is as follows.
Marshall vs. Craig.
Craig having brought an action of covenant against Marshall, andrecovered judgment, which,on an appeal to this court was affirmed ; Marshall filed his bill in chancery, and obtained an injunction : and upon a final hearing, the bill being dismissed and the injunction dissolved, Marshall has again appealed to this court. The material facts which formed the basis of the adjudication in the action at law, are essentially the same as those which are presented by the case now before the court ; and to avoid repetition, the statement of the facts in the opinion then delivered is referred to.
The main question therefore is, whether these facts, though not constituting a defence at law, afford ground for relief in equity, The fairness of the contract is not impeached, nor can its object, so far as it was intended to secure to Craig for a limited time the right of a preference in the purchase of the outstanding title of Bris-coe to the land sold by Craig to Marshall, be considered either illegal or immoral. In the action at law which was brought to recover the one third of the price of the land, which by the agreement was payable only upon the event of Craig’s purchasing and transferring to Marshall Briscoe’s claim ; it was necessary for Craig to shew, either that he had purchased and transferred Briscoe’s claim, or some legal excuse for not having dene it. That he had not done so, was alleged and admitted in the pleadings, and the excuse offered was, that Marshall, the next day after the agreement between him and Craig, had, in violation of that agreement, contracted for the purchase of Briscoe’s claim from one *395 Jackson, who alleged he had it in his option ; and ah terwards, within the time in which by the agreement Craig had the pre-emptive right, received a conveyance from Jackson, who in the mean time had completed his purchase from Briscoe. This excuse, which in point of fact is incontrovertibly true, was deemed, in point of law, sufficient to entitle Craig to recover, upon the general principle that wherever a man by doing a previous act, would acquire a right, if owing to the conduct oí the other party he is prevented from doing it, he acquires the right as completely as if it had been actually done.
The correctness of this principle is abundantly established by the authorities cited in the opinion delivered by this court in the action at law, and its application to the case most forcibly and conclusively illustrated ; that it cannot be less operative in a court of equity than in a court of law is obvious. The same rules of decision govern both courts ; the former cannot any more than the latter decide in opposition to legal principles, in a case to which those principles are applicable ; to do so would be ah assumption of an arbitrary discretion, as pernicious to the best interest of the community, as it is contrary to the fundamental principles of our government. Even those rules of law which in their nature are technical and positive, cannot be disregarded by a court of equity- — See 3 Black. Com. 432, &c. But the principle which denies to a party who prevents a thing from being done, the right to avail himself of the non performance he has occasioned, is not a mere technical rule of the common law, but is founded upon the basis of moral equity, and is essential to the preservation of good faith i(n the intercourse of society. If a party, by preventing an act from being done, upon the doing of which he had stipulated for the performance of some duty, would be relieved from his obliga-lion to perform such duty, it must easily be perceived that those who might be disposed to be faithless to their engagements, would too often be able to effect their purpose ; such a doctrine would evidently tend to relax the ties which bind men to a faithful performance of their contracts, and in its operation upon society be attended with the most baneful effects. The principle therefore upon which the decision at lav/ was founded, *396 ⅛ defensible not only upon the score of authority, but upon its intrinsic utility.
It might have admitted of some doubt whether Marshall could not in equity, have been relieved from the operation of this principle notwithstanding the decision at law, if he had shewn that Craig had assented to his making the purchase of Briscoe’s claim ; in that case a court of equity might have considered him a trustee for Craig, and allowed him credit for the money expended in the purchase. But there is no direct allegation in the bill of Craig’s acquiescence in the purchase, and the insinuations to that effect are peremptorily and posi, tively repelled by the answer and wholly unsupported by proof, To treat Marshall as a trustee for Craig against his consent in consequence of an act done in manifest violation of their express agreement, would be unwarranted by any precedent, and in effect would be giving countenance to a plain breach of moral duty* which enjoined upon Marshall the observance of his Contract.
The unfairness of Craig’s conduct with respect to the trial at law, as charged in the bill, is not supported, and requires no particular comment, as the material facta now proven are the same as those proven on the trial at law. — —Decree affirmed.